**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MONIFA FLETCHER and ANNALISA COTTE
individually and on behalf of all others similarly
situated,

            Plaintiffs,

            vs.

EWC VENTURES, LLC; EWC VENTURES
STORES, LLC; EWC MERRICK I, LLC, as
successors in interest to EWC Merrick, Inc., EWC
MERRICK II, LLC, and DOES 1-16

            Defendants.

Civil Action No. 2:17-cv-900

**CLASS AND COLLECTIVE ACTION**
**COMPLAINT FOR DAMAGES,**
**RESTITUTION AND INJUNCTIVE**
**RELIEF**

**JURY TRIAL DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, by their attorneys,

The Law Office of Christopher Q. Davis, PLLC, allege, upon personal knowledge and upon

information and belief as to other matters, as follows:

**NATURE OF ACTION**

1.      This is a collective and class action brought by Lead and Putative Class

Representative Plaintiffs Monifa Fletcher and Annalisa Cotte (together, the "Representative

Plaintiffs" or "Lead Plaintiffs") and all putative plaintiffs (collectively, "Plaintiffs"), on their

own behalf and on behalf of the proposed collective classes and classes identified below.

Plaintiffs and the Putative Class and Collective Class members were or are employed by EWC

Ventures, LLC ("EWC Ventures"); and/or EWC Ventures Stores, LLC ("EWC Ventures

Stores"), EWC Merrick I, LLC ("EWC Merrick I"), and/or EWC Merrick II, LLC ("EWC

Merrick II", together with EWC Ventures, EWC Ventures Stores and EWC Merrick East, the

corporate single-entity "EWC" or "Defendants") as non-exempt hourly and/or commissioned

Wax Specialists and not paid proper overtime premium compensation, "gap time"

compensation, and were subject to unlawful deductions from earned commissions.  Defendants also failed to provide Plaintiffs and the Putative Class with notices of their rate of pay and/or accurate wage statements in violation of New York Labor Law ("NYLL") §195(3).  The Putative Class and Collective Class of employees are similarly situated to the Plaintiffs under Federal Rule of Civil Procedure 23 and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and have suffered the same violations pursuant to Defendants' common policies and practices.

2.     The Collective Class is made of all persons who are or have been employed by Defendants as hourly and/or commissioned Wax Specialists at Defendants' corporately owned and non-franchised stores at any time within the United States within three years prior to this action's filing date through the date of the final disposition of this action (the "Collective Class Period") and who were subject to Defendants' common unlawful policies and/or practice of failing to include commissions and bonuses in the regular rate of pay calculations for the same of calculating and paying overtime premiums for all hours worked over 40 in a given workweek.

3.     The Class is made up of all persons who are or have been employed by Defendants as hourly and/or commissioned Wax Specialist at Defendants' corporately owned and non-franchised stores within the State of New York at any time within six years prior to the filing date of this action through the final disposition of this action (the "Class Period") and who were subject to Defendants' common unlawful policies and/or practice of (i) failing to include commissions and bonuses in the regular rate of pay calculations for the sake of determining and paying time-and-one-half overtime premiums for all hours worked over 40 in a given workweek; (ii) failing to pay lawful gap-time compensation; (iii) taking improper deductions from earned wages, and (iv) failing to provide, at the time of hiring, and/or with each weekly payment of wages, notices and written wage statements, and failing to maintain and update required records regarding wages,

including but not limited to commissions and bonuses, as required by the NYLL, the NYCRR, New York's Wage Theft Prevention Act, and relevant regulations.

4.     Plaintiffs seek relief for the Class pursuant to the applicable provisions of the New York Labor Law ("NYLL") and Collective Class under the Fair Labor Standards Act ("FLSA"), to remedy the Defendants' failure to pay all wages and tips due and for notice and recordkeeping failures, in addition to injunctive relief.

## PARTIES

5.     Individual and Representative Plaintiff Monifa Fletcher is a former Wax Specialist, and presently and at all relevant times residing in Long Island, New York.  She was employed by Defendants between February 2014 and November 1, 2016 as a Wax Technician in the two Merrick, New York store locations (EWC Merrick I and EWC Merrick II).

6.     Individual and Representative Plaintiff Annalisa Cotte is a current Wax Specialist, and presently and at all relevant times residing in Queens, New York.  She was employed with Defendants between February 2011 and January 5, 2017 and has worked in the two Merrick, New York store locations (EWC Merrick I and EWC Merrick II).

7.     Throughout the relevant time periods Plaintiffs and the putative Class and Collective Class members performed services as Wax Specialists while employed by Defendants at their corporately owned stores located in New York State and throughout the U.S and received customer tips, commissions and hourly wages for their labor.

8.     Defendant EWC Ventures, LLC is a Delaware corporation, formed on December 12, 2012, with principle places of business at The Village at Gulfstream Park, 600 Silks Run, Suite 2270, Hallandale Beach, Florida, 33009.

9.     Defendant EWC Ventures Stores, LLC is a Florida corporation, formed on February 12, 2014, with principle places of business at The Village at Gulfstream Park, 600 Silks Run, Suite 2270, Hallandale Beach, Florida, 33009.

10.     EWC Ventures Stores is a subsidiary-holding company of EWC Ventures and is responsible, together with EWC Ventures for managing the company-owned operations in the United States which employed Plaintiffs.  David Coba is identified as EWC Ventures Stores' President and Chief Executive Officer and Joshua Coba is identified as EWC Ventures Stores' Vice President and Chief Operating Officer.  EWC Ventures Stores is managed and operated by EWC Ventures pursuant to formal and informal operations and management agreements between EWC Ventures and EWC Ventures Stores and under the direction of CEO David Coba and COO Joshua Coba.

11.     EWC Ventures is the parent corporation of EWC Ventures Stores, EWC Merrick I, and EWC Merrick II, and all corporately owned and non-franchised stores in the United States which employed Plaintiffs and the putative Collective Class and Class.

12.     Defendant EWC Merrick I, LLC is an active New York Corporation doing business in New York State as "European Wax Center" with, upon information and belief, a principal place of business at The Village at Gulfstream Park, 600 Silks Run, Suite 2270, Hallandale Beach, Florida.  EWC Merrick I operates at 2095 Merrick Road, in Merrick, New York.  EWC Merrick I was formed on December 18, 2014, after it merged with EWC Merrick, Inc. and became the successor in interest.  EWC Merrick., Inc. was originally formed on May 25, 2010 and was merged into EWC Merrick I on January 1, 2015.  Similar to all corporate-owned European Wax Centers in the US, Defendant EWC Merrick I is a direct subsidiary of EWC Ventures Stores and jointly managed and operated by EWC Ventures and EWC Ventures Stores,

pursuant to formal and informal operations and management agreements between and among them and under the direction of CEO David Coba and COO Joshua Coba.

13.     Defendant EWC Merrick II, LLC is an active New York Corporation doing business in New York State as "European Wax Center" with, upon information and belief, its principal place of business at The Village at Gulfstream Park, 600 Silks Run, Suite 2270, Hallandale Beach, Florida.  EWC II operates at 2071Merrick Road, in Merrick, New York. EWC Merrick II was formed on August 2, 2012.  Similar to all corporate-owned European Wax Centers in the US, Defendant EWC Merrick II is a direct subsidiary of EWC Ventures Stores and jointly managed and operated by EWC Ventures and EWC Ventures Stores, pursuant to formal and informal operations and management agreements between and among them and under the direction of CEO David Coba and COO Joshua Coba.

14.     Upon information and belief, John Does #1-16 d/b/a European Wax Center represent other corporately owned and non-franchised European Wax Centers in the United States (together, with EWC Merrick I and EWC Merrick II, the "European Wax Centers") and which are direct subsidiaries of EWC Ventures Stores and jointly managed and operated by EWC Ventures and EWC Ventures Stores pursuant to formal and informal operations and management agreements between and among them and under the direction of CEO David Coba and COO Joshua Coba.

15.     At all relevant times, the Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

16.     At all relevant times, the Defendants were a covered employer within the meaning of the FLSA and the NYLL.

17.     At all relevant times during the Class and Collective Class Periods, Plaintiffs worked for and were employed by EWC Ventures, EWC Ventures Stores and at least one of the European Wax Centers.

18.     Defendants EWC Ventures, EWC Ventures Stores, EWC Merrick I and EWC Merrick II have a single Chief Executive Officer, David Coba, and single Chief Operating Officer, Joshua Coba, who are together responsible for managing Defendants' operations for all corporate owned European Wax Centers in the United States.  David Coba and Joshua Coba work out of EWC's Corporate Headquarters at The Village at Gulfstream Park, 600 Silks Run, Suite 2270, Hallandale Beach, Florida.

19.     Upon information and belief, Defendants' corporately owned European Wax Centers throughout the country are commonly operated and managed pursuant to common policies and practices, including common Human Resources policies, job descriptions and titles, and, employee compensation and FLSA classification policies.

20.     The "European Wax Center" trade name is registered and owned by EWC P&T, LLC, which is a wholly owned by EWC Ventures for the purpose of owning the "marks and other intellectual property." (https://trademarks.justia.com/owners/ewc-p-t-llc-2528302/).

21.     Plaintiffs, pursuant to common job description applicable to all Wax Specialists employed in European Wax Centers, were required to wear a uniform and nametag, consisting of all white shoes, red scrub pants, and a red scrub shirt with the "European Wax Center" trademark, which is registered and owned by EWC P&T, LLC, which is a wholly owned by EWC Ventures for the purpose of owning the "marks and other intellectual property."

22.     Employee job titles and duties are the same throughout all corporately owned European Wax Centers around the country and job opportunities in all corporately owned stores

are advertised on the EWC website – www.waxcenter.com -- through a single "Corporate

Positions" link under the "Join Us" tab.

23.     Defendants employed Plaintiffs and similarly situated employees at all times

relevant.  Each Defendant exercised formal and functional control over Plaintiffs' working

conditions, and over the unlawful policies and practices alleged herein.

24.     Defendants' operations are interrelated and unified.  During all relevant times,

Defendants' corporately owned stores employing Plaintiffs in the United States shared common

management and were centrally controlled, owned and managed by Defendants EWC Ventures

and EWC Ventures Stores.

25.     All business operations and corporately owned European Wax Centers are

marketed as one entity under the corporate brand ("European Wax Center" or "EWC") and logo.

26.     At all relevant times, upon information and belief, the Defendants maintained

control, oversight, and direction over Plaintiffs and similarly situated employees in US-based

non-franchised European Wax Centers according to common employment policies such as those

mentioned above, and pursuant to common timekeeping, payroll, benefits management, and

other systems.

27.     At all relevant times, all the Defendants have met the definition of Plaintiffs'

"employer" under Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and NYLL §190(3).

28.     At all times hereinafter mentioned, Defendants have operated together as a single

common enterprise in conducting business, including the business practices described in this

Complaint.  The Defendants are interrelated companies that have common ownership, officers,

managers, products, and corporate purpose.

29.     At all times hereinafter mentioned, Defendants employed employees, including Plaintiffs, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials have moved in or produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) &(s).

30.     Defendants' gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

31.     At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Defendants.

## JURISDICTION & VENUE

32.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  The Court also has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332.

33.     In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207 et seq.

34.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

35.     Venue is proper in the United States District Court, Eastern District of New York pursuant to 28 U.S.C. § 1391, because the wage violations which give rise to Plaintiffs' claims occurred in this District.

36.     This Court has personal jurisdiction over Defendants because they reside in and/or routinely transact business in New York.

## WAGE AND HOUR COLLECTIVE CLASS
## AND CLASS ACTION FACTUAL ALLEGATIONS

37. European Wax Center is a major chain of hair removal salons in the United States, founded by brothers David and Josh Coba in Florida in 2004. It is the world's largest wax center brand with nearly 800 centers across the United States which are either franchised or corporately owned.

38. EWC Merrick I and EWC Merrick II are two of the approximately 18 corporately owned stores. EWC Ventures and EWC Ventures Stores also own and operate corporately owned stores in Florida and North Carolina.

39. Plaintiffs primary job duties, as well as those of the putative Class and Collective Class, as defined below, are to provide waxing/hair removal services to Defendants' customers and to sell Defendants' exclusive line of products.

40. Based on a common job description, found of Defendants' website – http://www.waxcenter.com/careers/corporate -- the Wax Specialist's "primary goal is to educate guests on the benefits and frequency of waxing while performing waxing services… [and] educat[e] guests on proper skin care in conjunction with [EWC's] exclusive product portfolio". A Wax Specialist's common responsibilities include, but are not limited to, (i) maintaining a thoroughly clean wax suite at all times, (ii) retaining clients through pre-booking, (iii) providing high quality wax services while maintaining a "cheerful and positive attitude", (iii) adhering to the reservation book, (iv) maintaining and exceeding center and individual goals, (v) educating guests on EWC's products, the benefits of waxing consistently, the savings provided by buying Wax Passes, and current in-center promotions; (vi) finding coverage and ensuring no guests are currently booked when requesting days off; and (vii) adhering to appropriate dress code and nametag.

41.     Upon information and belief, David Coba, EWC's CEO, and Josh Coba, EWC's COO, as a regular practice, visit EWC Merrick I and EWC Merrick II a few times a year and regularly communicate with individuals on the ground, including the store managers and district managers.

42.     Upon information and belief, David Coba and Josh Coba oversee and enforce all operational polices and practices which relate to the services provided by Wax Specialist in the corporately owned non-franchised locations, including but not limited to EWC Merrick I and EWC Merrick II.

43.     Upon information and belief, EWC employees well over 100 Wax Specialists at its various corporately owned stores nation-wide and in the last six years has employed more than 40 Wax Specialists between the EWC Merrick I and EWC Merrick II locations in the last six years.

44.     EWC Merrick I, formally EWC Merrick Inc., rapidly grew to one of the busiest stores in the country, waxing over 1,000 people per week.  Because of the rapid growth, EWC decided to open up another location just a few doors away to accommodate spill over business. As such, EWC Merrick Inc. merged into EWC Merrick I and at approximately the same time EWC Merrick II was formed.

45.     All Wax Specialist are subject to the same rules, compensation, personnel policies, operating policies and procedures, and human resources policies and practices, and generally share the same job description.

**Defendants' Miscalculate Plaintiffs' Regular Rate of Pay in Determining Overtime Premiums**

46.     EWC established and maintains a compensation system whereby Wax Specialists regular compensation from Defendants' was comprised of two components: (1) a base hourly

rate of pay, and (2) "Supplemental Compensation" paid in the form of (i) commissions for the sale of products and/or services, and (ii) bonuses for meeting pre-determined sales goals and/or winning "contests".

47.     Plaintiffs never received or signed any written agreement setting forth the terms and conditions of their commissions and/or bonus payments.

48.     Defendants' paid Plaintiffs their Supplemental Compensation each pay period.

49.     The Supplemental Compensation that Plaintiffs received included commissions on the sale of EWC's proprietary line of products and commission on actual services performed. Plaintiffs received approximately 5% of each service performed and 5% of all products sold.

50.     The Supplemental Compensation that Plaintiffs received also included non-discretionary bonuses which were used to encourage them to work more steadily, rapidly or efficiently. The bonuses were based on pre-determined sales goals, which upon information and belief, were determined based, in part, on the number of clients Plaintiffs had booked.

51.     The Supplemental Compensation also, from time to time, included contests where the Wax Specialists competed against each other to make the most sales during a set time frame. The top one (1) to three (3) winners of any given contest are rewarded with additional compensation.  These contests were used to encourage Plaintiffs and all other Wax Specialists to work more steadily, rapidly or efficiently.

52.     The Supplemental Compensation was awarded to Plaintiffs and all other Wax Specialists to induce them to work more steadily, rapidly, and efficiently and are thus required to be included within the regular rate of pay under the FLSA and the NYLL.  Despite this, Plaintiffs Supplemental Compensation was not included within the regular rate of pay for the purposes of calculating Plaintiffs' overtime wages at any point during the class and collective class periods.

53.     Instead, when Plaintiffs worked overtime they were improperly paid at an overtime rate calculated based on their base hourly rates of pay and not their actual "regular rate of pay", which must include all remuneration for employment.  Specifically, Plaintiffs' regular rate of pay must include not only their hourly pay but also all their Supplemental Compensation as set forth above.

54.     For example, during the pay period starting on September 11, 2016 and ending September 24, 2016, Plaintiff Fletcher earned: (i) $36.64 in commissions on products sold, (ii) $277.69 in commissions on services sold, and (iii) a bonus of $300.  Ms. Fletcher's pay stub reflects her working a total of 81.75 hours, or 80 hours of straight time and 1.75 hours of overtime.  However, Ms. Fletcher's non-discretionary commissions and/or bonuses were not included in calculating her regular rate of pay for purposes of determining an overtime rate of pay.  Instead her base hourly rate of $10.50 was used to calculate an improper $15.75 overtime rate.

55.     Additionally, during the pay periods ending August 13, 2016 and August 27, 2016, Ms. Fletcher worked 4.89 and 4.81 hours of overtime, respectively.  During these weeks, Ms. Fletcher's Supplemental Compensation was similarly not included in calculating her regular rate of pay for purposes of determining her overtime rate.

56.     Plaintiff Cotte's Supplemental Compensation was similarly not included in calculating their regular rate of pay for overtime purposes and thus in the weeks in which she worked overtime, Plaintiff Cotte was not paid lawful overtime premiums for all hours worked over 40 in a given workweek.

57.     Defendants failure to include Plaintiffs' supplemental compensation for purposes of calculating their regular rate of pay for overtime purposes resulted in Plaintiffs being paid overtime pay based on an incorrectly low regular rate of pay.  *See* 29 C.F.R. § 778.117.

58.     The total commissions and bonuses paid to Plaintiffs did not exceed the total of all other compensation paid to Plaintiffs.

**Defendants' Unlawful "Off the Clock" Practice.**

59.     Defendants operated two European Wax Centers in Merrick, New York located just a few storefronts away from each other. As set forth above, the two locations are each separately incorporated as EWC Merrick I and EWC Merrick II.  However, the two entities are entirely owned and operated by EWC Ventures and EWC Ventures.

60.     EWC Merrick I and EWC Merrick II operate as and hold themselves out as a single entity and often share employees.

61.     During the times when both EWC Merrick I and EWC Merrick II were open and operational, there was a fluid movement of employees between the two.

62.     For example, when both EWC Merrick I and EWC Merrick II were open and operational, Plaintiffs would often work at both locations in a single workweek.

63.     For example, Plaintiff Cotte's "home" store was EWC Merrick I, but she would often be required to work at EWC Merrick II when that store needed coverage.  It was not uncommon for one or both stores to need coverage when a Wax Specialist called out and to have a Wax Specialist from the other location cover a shift at a non-home store.

64.     Additionally, Plaintiff Fletcher's regular schedule included three (3) days a week EWC Merrick I and one (1) day a week at Merrick II. Upon information and belief, other Wax

13

Specialists were similarly assigned to regularly work at both EWC Merrick I and EWC Merrick II.

65.     Plaintiffs' time worked at each location was recorded separately and Plaintiffs were paid on two separate paychecks during weeks they worked at both locations.  This effectively circumvented the FLSA and NYLL overtime laws when Plaintiffs worked more than 40 hours a week between the two locations.

66.     Plaintiff Fletchers' combined hours worked at both EWC Merrick I and EWC Merrick II was often over 40 hours.  This specifically happened during any weeks where she picked up additional shifts to cover for her co-workers.  She was nonetheless denied overtime pay because she was paid for her time worked at each location separately and not in the aggregate, as required by the NYLL and the FLSA.

67.     In or about April 2016, EWC Merrick I closed for renovations and Defendants could no longer circumvent the overtime laws by issuing Plaintiffs' two separate paychecks.

68.     Additionally, Plaintiffs were not paid from the time they arrived at work and began their first activity – setting up their rooms and preparing the wax – until their last activity – cleaning up their rooms and clocking out.

69.     For example, Plaintiff Cotte's regular schedule, beginning on or about Spring 2016, was four days a week from 7:30 AM to 2:30 PM.  She regularly arrives at around 7:10 AM to set up her room and be ready for her first client and regularly leaves at around 2:45/3:00 PM after cleaning her room.  This amounts to approximately 56 plus hours of compensable working time during every two-week pay period.  However, during pay periods which Plaintiff Cotte was not absent from work, she nonetheless only received compensation for approximately 50 hours of work or less.  For example, during the two-week pay period from 11/06/16 to 11/19/16,

Plaintiff Cotte worked eight full 7-hour shifts totaling at least 56 hours; however, she was only compensated for 43.67 hours.

70.    As such, Defendants failed to compensate Plaintiffs at their agreed to hourly wage for all hours worked.

71.    Additionally, during 9-hour Sunday shifts Plaintiffs were given a 30-minute meal break.  Defendants only provided a meal break during the 9-hour shifts, despite NYLL regulations requiring a meal break for any shift over six hours.

72.    Plaintiffs' meal breaks were automatically deducted from their time worked.

73.    However, because Plaintiffs were scheduled with appointments back to back all day long, with little to no down time, they were often forced to work through their thirty-minute unpaid meal break.  Specifically, Plaintiffs had no time built into their schedule to clean their rooms and provided no cushion to account for services going long, or accommodating walk-in customers.

74.    Thus, rather than take the thirty-minute break, Plaintiffs would eat lunch between seeing customers and cleaning their rooms without stopping work or taking a bona fide break.

75.    Plaintiffs worked off-the-clock during their meal breaks for approximately fifteen (15) to thirty (30) minutes nearly every time they worked the 9-hour shift where meal breaks were allotted.

76.    Plaintiff Fletcher was regularly scheduled to work a 9-hour Sunday shift. Plaintiff Cotte regularly worked the 9-hour shift until approximately April 2016.

77.    Despite working through their meal break on multiple occasions, the 30-minute meal break was automatically deducted from Plaintiffs' pay.

**Defendants' Unlawfully Require Plaintiffs to Forfeit Earned Commissions.**

78.     Plaintiffs earned commissions for products and services sold.

79.     Plaintiffs' commission structure was not reduced to a writing, as required by N.Y. Labor Law § 191(c).

80.     Because Plaintiffs' did not have any written or implied contractual provisions as to when their commissions were deemed earned, the default rule – that the commission is earned when the employee's production of a ready, willing and able purchaser of the services – applies.

81.     Plaintiffs commissions for the sale of goods were earned at the moment the customers paid for the products and Plaintiffs commissions for services performed were earned when the customers paid for and received the services rendered.

82.     This is consistent with the Employee Summary print out which Plaintiffs received, if requested, at the end of each day setting forth the service provided and the total price of such service.  Such print outs contained a notice on the bottom, "*Service/Product will be paid at full commission."  As such, at the time the services were provided, they were deemed earned wages.

83.     At all times during the Class Period, Defendants took unlawful deductions from Plaintiffs' earned commissions when they charged-back for returns and/or service touch-ups after the service was provided and/or product sold.

## FLSA COLLECTIVE ACTION ALLEGATIONS

84.     Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

85.     Defendants employed Plaintiffs during the Collective Class Period.

86.     Defendants classified Plaintiffs and Members of the Collective Class as nonexempt for the purposes of the FLSA, paying them an hourly wage rather than an annual salary.

87.     Upon information and belief, there are approximately more than 40 current and former Wax Specialist who are similarly situated to Plaintiffs and who were denied overtime compensation.

88.     The Lead Plaintiffs represent other Wax Specialist, and are acting on behalf of Defendants' current and former Wax Specialists interests as well as their own interests in bringing this action.

89.     Defendants unlawfully miscalculated Plaintiffs, and all individuals employed as Wax Specialists, regular rate of pay for purposes of calculating overtime premiums by failing to include commissions and non-discretionary bonuses in the regular rate of pay calculation for the sake of paying time-and-one-half overtime premiums.

90.     At all times during the Collective Class Period, Defendants, as a matter of common policy and/or practice, have not paid Plaintiffs lawful overtime premiums for all hours worked in excess of 40 hours in a work week.

91.     Plaintiffs seek to proceed as a collective action, pursuant to 29 U.S.C. §216(b), on behalf of themselves and the following class of persons:

**Collective Class:**     All individuals employed by Defendants as hourly and/or commissioned Wax Specialist, or similar titles, at any of Defendants' corporately owned and non-franchised stores in the United States during the Collective Class Period, who earned but were not paid lawful FLSA overtime premiums for all hours worked over 40 in a work week during the Collective Class Period based on the practices alleged herein.

92.     Specifically, Plaintiffs' Collective Class is further defined as involving (i) claims for unpaid overtime based on Defendants' company-wide policy of miscalculating the "regular rate of pay" for the purposes of determining overtime pay entitlement; and (ii) claims for unpaid overtime compensation for Defendants' practice of forcing Plaintiffs to work "off the clock" and without compensation which they knowingly suffered and permitted, and/or commonly enforced FLSA recordkeeping practice violations which resulted in unpaid wages.

93.     As such, the Named Plaintiffs and the Collective Class suffered damages for unpaid earned overtime wages under the FLSA in each of the weeks they worked during the Collective Class Period.

94.     Defendants were aware or should have been aware that the law required it to pay non-exempt employees, including Plaintiffs and the Collective Class, an overtime premium of one and one-half times their regular rate of pay for all work-hours Defendants suffered or permitted them to work in excess of 40 per workweek.

95.     Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs and the Collective Class.

96.     Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the Collective Class, and as such, notice should be sent to the Collective Class.

97.     There are numerous similarly situated current and former employees of Defendants who were subject to the aforementioned policies in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit.

98.     Those similarly situated employees are known to the Defendants and are readily identifiable through Defendants' records.

## FEDERAL RULE OF CIVIL PROCEDURE
## RULE 23 NEW YORK CLASS ALLEGATIONS

99.    Plaintiffs incorporate by reference all of the factual allegations made in the

preceding paragraphs.

100.    Plaintiffs seek to proceed as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of the following defined classes:

> **Proposed Class:**    All individuals employed by Defendants as hourly and/or
> commissioned Wax Specialists, or similar titles at any of
> Defendants' corporately owned and non-franchised stores
> in the New York State during the Class Period, who  (i) did
> not have their commissions and/or bonuses included in
> their regular rate of pay when calculating their overtime
> rate of pay; (ii) were not paid their regular and agreed upon
> rate of pay for all hours worked up to (40) in a week; (iii)
> were not paid overtime rate of time and one-half their
> regular rate of pay for all hours worked over forty (40) in a
> week; and /or (iv) were not provided accurate wage
> statements and notice of pay rates during the Class Period
> based on the practices alleged herein (collectively the
> "Class" or "Class Members").

101.    Specifically, Plaintiffs' Class is further defined as involving: (i) claims for unpaid

overtime based on Defendants' company-wide policy of miscalculating the "regular rate of pay"

for the purposes of determining overtime pay entitlement; (ii) claims for unpaid overtime

compensation for Defendants practice of forcing Plaintiffs to work "off the clock" and without

compensation which they knowingly suffered and permitted which resulted in unpaid wages; and

(iii) claims for wage statement violations for Defendants' failure to provide Plaintiffs' with

notice of pay at the start of employment and accurate wage statements on each payday that

include the information required by NYLL §195(3), including the correct  number of hours

worked during the pay period.

102.    Numerosity:    The Proposed Class is so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the Class Period, Defendants employed over 40 people who satisfy the definition of the Proposed Class.

103.    Typicality:    Plaintiffs' claims are typical of those of the Proposed Class.  The Representative Plaintiffs are informed and believe that, like other Wax Specialists, the Class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay proper wages, deductions from earned commissions, and failure to keep adequate records and failure to furnish accurate wage statements and pay notices.

104.    Superiority:    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

105.    Adequacy:    The Representative Plaintiffs will fairly and adequately protect the interests of the Proposed Class, and have retained counsel experienced in complex FLSA and NYLL class and collective action litigation.

106.    Commonality:    Common questions of law and fact exist to all members of the Proposed Class and predominate over any questions solely affecting individual members of the Proposed Class, including but not limited to:

a.   Whether Defendants have a policy or practice of failing to include commissions and/or bonuses of Wax Specialists in their regular rate of pay when calculating overtime pay;

b.   Whether Defendants failed and/or refused to pay Plaintiffs and the Class for all work performed while off-the-clock;

c.  Whether the Defendants failed and/or refused to pay Plaintiffs and the Class for all the compensable time that they worked for Defendants;

d.  Whether the Defendants failed and/or refused to pay Plaintiffs and the Class for all hours worked up to forty (40) in a week at the straight or agreed upon rate;

e.  Whether Defendants correctly compensated Plaintiffs and the Class for all hours worked in excess of forty (40) per week;

f.  Whether Defendants failed and/or refused to pay Plaintiffs and the Class overtime of time and one-half their regular rate of pay for all hours worked over forty (40) in a week;

g.  Whether Defendants failed to keep true and accurate time records for all hours worked by their employees as required by New York Labor Law §§ 190 *et seq.* and 650 *et seq.*;

h.  Whether Defendants failed to comply with the posting and pay notice requirements of the NYLL;

i.  Whether the Defendants failed to provide Plaintiffs and the Class with an accurate statement with every payment of wages, listing gross wages, deductions and net wages as required by New York Labor Law § 195(3);

j.  Whether the Defendants engaged in a pattern and/or practice in New York of forcing, coercing, and/or permitted Plaintiffs and the Class to perform work for Defendants' benefit which was not compensated;

k.  Whether Defendants' policy or practice of failing to include the commission and/or bonuses of Wax Specialists into the calculation of their overtime rate of pay was done willfully or with reckless disregard of the law;

l.   Whether the Defendants' policy of failing to pay Wax Specialists for time worked off-the-clock was instituted willfully or with reckless disregard of the law;

m.   Whether the Defendants policy of failing to pay Wax Specialist their straight or agreed upon wages for all hours worked up to forty (40) in a week was instituted willfully or with reckless disregard of the law;

n.   Whether the Defendants policy of failing to pay Wax Specialist their overtime wages of time and one-half their regular rate of pay for all hours worked over forty (40) in a week was instituted willfully or with reckless disregard of the law;

o.   Whether Defendants should be enjoined from such violations of the NYLL in the future; and

p.   The nature and extend of class-wide injury and the measure of damages for those injuries.

107.   The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

108.   Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Proposed Class predominate over any questions affecting only individual members of the Proposed Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendants' common and uniform policies and practices denied the Proposed Class the wages to which they

are entitled.  The damages suffered by the individual Proposed Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

109.    Plaintiffs intend to send notice to all members of the Proposed Class to the extent required by Rule 23.  The names and addresses of the Proposed Class are available from Defendants.

110.    During the class period, and upon information and belief, Plaintiffs each worked more than 1 hour of gap time for which they were not paid the lawful wages under either the NYLL or the FLSA and more than 1 hour of overtime-eligible work during the class and collective class periods for which they were not paid a lawful overtime premium of time and one half of their regular rate of pay.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Unlawful Failure to Pay Overtime Compensation under the Fair Labor Standards Act)**

111.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

112.    Plaintiffs consent in writing to be a part of this action, pursuant to 20 U.S.C. § 216(b).  Plaintiffs written consent forms are attached hereto.  Plaintiffs anticipate that as this case proceeds, other individuals will sign consent forms and join as plaintiffs.

113.    At all relevant times, Defendants have been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

114.    At all relevant times, Defendants have employed and continue to employ employees, including Plaintiffs, and the Collective Class members.

23

115.    At all relevant times, upon information and belief, Defendants have gross operating revenues in excess of $500,000.00.

116.    The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

117.    During their employment with Defendants, within the applicable statute of limitations, Plaintiffs and the other Collective Class members have worked in excess of forty hours a workweek without lawful overtime compensation.

118.    Defendants did not include required compensation in calculating the overtime rate of pay for Plaintiff and the other Collective Class members.

119.    As a result, Plaintiffs and the Collective Class were uniformly and based on the policies and practices articulated above, not paid FLSA mandated overtime premiums of one and one half their regular rate of pay.

120.    Also, by failing to accurately record, report, and/or preserve records of hours worked by Plaintiffs and the Collective Class, Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 20 U.S.C. § 201, et seq.

121.    Defendants have failed to make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiffs and the Collective Class.

122.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

123.    Because Defendants' violations of the FLSA were willful, a 3-year statue of limitation applies, pursuant to 29 U.S.C. § 255.

124.    Plaintiffs, on behalf of themselves and the Collective Class, seek recovery of their attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b)

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Failure to Pay Lawful Overtime Premiums in Violation of**
**NYCRR § 142.2.2 and Article 19 of the NYLL)**

125.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

126.    At all relevant times, Plaintiffs were employees and the Defendants have been employers within the meaning of the New York Labor Law.

127.    The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

128.    Defendants have failed to pay Plaintiffs and the Rule 23 Class the overtime wages to which they were entitled under the New York Labor Law.

129.    Defendants did not include required compensation in calculating the overtime rate of pay for Plaintiff and the other Class members.

130.    As a result, Plaintiffs and the Class were uniformly and based on the policies and practices articulated above, not paid FLSA mandated overtime premiums of one and one half their regular rate of pay.

131.    By Defendants' failure to pay Plaintiffs and the Rule 23 Class Members premium overtime wages for hours worked in excess of 40 hours per week, they have willfully violated the New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State

Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

132.   Due to Defendants' violations of the New York Labor Law, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Failure to Pay Lawful "Gap Time" Wages in Violation of NYLL §§ 191, 193 and 652 and Article 19)

133.   Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

134.   At all relevant times, Plaintiffs were employees and the Defendants have been employers within the meaning of the New York Labor Law.

135.   The provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

136.   Defendants have failed to pay Plaintiffs and the Rule 23 Class the difference between the New York State minimum wage and their hourly rate of pay as determined by Defendants, for all hours worked in a workweek – a practice that is unlawful under the New York Labor Law.

137.   Specifically, Defendants failure to pay these – known as "gap time" wages under the relevant precedent - is prohibited by Section 193 of the New York Labor Law which expressly prohibits an employer from making unauthorized deductions from employees' wages.

138.    Section 193 prohibits deductions from employees' wages unless the deductions are (1) expressly authorized by and for the benefit of the employee and (2) limited to the enumerated categories of permissible deductions.

139.    Defendants made deductions from the wages of the Plaintiffs and the putative class for purposes which are not permissible under the statute.

140.    The deductions made by Defendants were not make with the authorization of the employee and were not for their benefits.

141.    By Defendants practice of making unlawful deductions from Plaintiffs and the Class' earned wages, Plaintiff and the members of the class were damaged in an amount to be proven at trial.

**AS AND FOR A FORTH CAUSE OF ACTION**
**(Unlawful Deductions from Wages in Violation of NYLL § 193)**

142.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

143.    At all relevant times, Plaintiffs were employees within the meaning of the New York Labor Law.

144.    The Individual Defendants exercise control over the nature and structure of the employment relationship and economic control over the relationship such that they are "employers" under the FLSA and NYLL and are therefore individually subject to liability.

145.    Section 193 of the New York Labor Law expressly prohibits an employer from making unauthorized deductions from employees' wages.

146.    Section 193 prohibits deductions from employees' wages unless the deductions are (1) expressly authorized by and for the benefit of the employee and (2) limited to the enumerated categories of permissible deductions.

147.     Defendants made the aforementioned charge-backs and/or deductions from the wages of the Plaintiffs and the Putative Class for purposes that are not permissible under the statute.

148.    The deductions made by Defendants were not made for Plaintiffs and/or the Class' benefit.

149.    By Defendants' practice of making unlawful deductions from Plaintiffs' and Class' earned wages, Plaintiffs and the members of the class were damaged in an amount to be proven at trial.

150.    Due to Defendants' violations of the New York Labor Law, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendants all wages unlawfully deducted or charged, plus reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Failure to Furnish Required Notices in Violation of NYLL § 195)**

151.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

152.    At all relevant times, Plaintiffs were employees and the Defendants have been employers within the meaning of the New York Labor Law.

153.    The recording keeping provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

154.    Defendants did not provide Plaintiffs and members of the Rule 23 Class with legally sufficient time of hire wage notices as required by N.Y. Lab. Law § 195- 1(a).

155.    Defendants also did not provide Plaintiffs and members of the Rule 23 Class with legally sufficient statements, with every payment of wages, as required by N.Y. Lab. Law § 195-3.

156.    As a result of Defendants' unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages pursuant to N.Y. Lab. Law § 198, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

## PRAYER FOR RELIEF

WHEREFORE, Lead Plaintiffs, on behalf of themselves and all members of the putative class and collective actions, prays for relief as follows:

A.    That the Court determine that this action may proceed as a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

B.    That Defendants are found to have violated the provisions of the New York Labor Law as to Plaintiffs and the Class;

C.    That Defendants are found to have violated the Federal Fair Labor Standards Act as to Plaintiffs and the Collective Class;

D.    That Defendants' violations as described above are found to be willful;

E.    An award to Plaintiffs and the Collective Class and Class Members for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

F.   That Defendants further be enjoined to cease and desist from unlawful activities in violation of the FLSA and NYLL;

G.   That Plaintiffs' counsel and Plaintiffs Monifa Fletcher, Annalissa Cotte and Kimberly Cowen can adequately represent the interests of the class as class counsel and class representative, respectively.

H.   An award of reasonable attorneys' fees and costs pursuant to the NYLL and 29 U.S.C. § 216 and/or other applicable law; and

I.   For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury as to all issues so triable.

DATED:  February 16, 2017


_____/s/_____

Rachel M. Haskell, Esq.
Christopher Q. Davis, Esq.
The Law Office of Christopher Q. Davis
225 Broadway Suite 1803
New York, New York 10007
646-430-7930 (main)
646-349-2504 (fax)

*Counsel for Plaintiffs and the putative class*